**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| SHERRY B.,[1] | : | Case No. 3:20-cv-00408 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

**DECISION AND ORDER**

---

## I.     INTRODUCTION

Plaintiff filed an application for Disability Insurance Benefits in April 2017. She subsequently filed an application for Supplemental Security Income in July 2017. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's Statement of Errors (Doc. 9), the Commissioner's Memorandum in Opposition (Doc. 11), and the administrative record (Doc. 8). Plaintiff did not file a Reply.

## II.    BACKGROUND

Plaintiff asserts that she has been under a disability since January 1, 2009. At that time, she was forty-two years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] During the pendency of the claim, she changed age categories to a "person closely approaching advanced age." *See* 20 C.F.R. § 404.1563(d). Plaintiff has a "limited education." *See* 20 C.F.R. § 404.1564(b)(3).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 8-2, PageID 48-63), Plaintiff's Statement of Errors (Doc. 9), and the Commissioner's Memorandum in Opposition (Doc. 11). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. THE ALJ'S DECISION

As noted previously, the ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since January 1, 2009, the alleged onset date.

Step 2: She has the severe impairments of irritable bowel syndrome/gastritis, degenerative disc disease of the lumbar and thoracic spine, depression, and anxiety.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 CFR § 404.1567(b), subject to the following limitations: "never

4

climb ladders/ropes/scaffolds; occasionally climb ramps/stairs, crouch, stoop, kneel, crawl, and balance; avoid concentrated exposure to extreme cold/heat or humidity; avoid all exposure to hazards including dangerous, moving machinery and unprotected heights; can understand, remember, and carry out instructions for simple, routine, and repetitive tasks with sufficient persistence, concentration, or pace to timely and appropriately complete such tasks; occasional superficial interaction with co-workers and supervisors; no fast paced production rates or strict quota requirements; and can adapt to occasional simple and routine workplace changes."

She is capable of performing her past relevant work as a cashier.

Step 5: In the alternative, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. 8-2, PageID 50-63.) These findings led the ALJ to conclude that Plaintiff does not

meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 63.)

## V.    LAW AND ANALYSIS

Plaintiff does not dispute the medical summary set forth in the ALJ's opinion.

(Doc. 9, PageID 945.) Instead, Plaintiff contends that the ALJ erred by "fail[ing] to

properly evaluate the vocational expert testimony after incorrectly finding that [she] had

the [RFC] to perform light work." (*Id.* at PageID 946.) Plaintiff further asserts that she is

unable to perform light exertional work because she will "partake in off-task behavior

more than 15% of the workday and require monthly absences in excess of 2 times per

month." (*Id.*) These arguments are not persuasive. For the reasons discussed below, the

Court finds that the ALJ's findings are supported by substantial evidence.

A.    **The ALJ's RFC**

A claimant's residual functional capacity (RFC) is "the most [she] can still do

despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The Social Security regulations,

rulings, and Sixth Circuit precedent charge the ALJ with the final responsibility for

determining a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final

responsibility for deciding the RFC "is reserved to the Commissioner"); 20 C.F.R.

§ 404.1546(c) ("the [ALJ] . . . is responsible for assessing your [RFC]"); *Webb v.*

*Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("the ALJ is charged with the

responsibility of evaluating the medical evidence and the claimant's testimony to form an

'assessment of [her] [RFC]'").

The Commissioner determines the claimant's RFC based on relevant evidence in

the record, including objective medical evidence, medical opinions, other medical

evidence, evidence from non-medical sources, and prior administrative medical findings.

*See* 20 C.F.R. § 404.1545(a)(1)-(5). Consistent with applicable regulations, an ALJ may

also rely on the testimony of a vocational expert. 20 C.F.R. §§ 404.1560(b)(2),

404.1566(e). "Substantial evidence may be produced through reliance on the testimony of

a VE in response to a 'hypothetical' question, but only 'if the question accurately

portrays [Plaintiff's] individual physical and mental impairments.'" *Varley v. Sec'y of*

*Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Plaintiff contends that, due to her physical and mental impairments, she would

likely "partake in off-task behavior in excess of 15% and require more than 2 absences

per month." (Doc. 9, PageID 949.) Therefore, she argues that she cannot perform sedentary work.

Plaintiff's contentions are not well-taken. Her argument is based on speculation, not any objective medical evidence. The record contains no medical opinion that Plaintiff would consistently be off-task or miss work. Additionally, the ALJ provided a detailed summary of Plaintiff's medical records and treatment history, which Plaintiff does not dispute. (Doc. 8-2, PageID 51-61; Doc. 9, PageID 945.)

Plaintiff recites many subjective complaints—and she identifies several diagnoses and medical opinions—to challenge "the ALJ's interpretation" of the medical evidence. (Doc. 9, PageID 945, 948-51.) But the substantial evidence standard precludes this Court from weighing the evidence and deciding whether the preponderance of the evidence supports a different conclusion. *Biestek*, 139 S. Ct. at 1154 (2019). Specifically, this Court may only determine whether the ALJ's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

The Court finds that the ALJ's findings are supported by substantial evidence. The ALJ acknowledged many of Plaintiff's subjective complaints which included allegations of back pain, numbness in the hands and fingers, difficulty with exertional activities such as lifting and standing, and difficulty with activities of daily living. (Doc. 8-2, PageID 54-55.) She also acknowledged Plaintiff's IBS-related complaints which included diarrhea occurring at least eight to nine times per day, intermittent constipation, and nausea and vomiting occurring approximately twenty days per month. (*Id.* at PageID 54-55.)

The ALJ then summarized the medical records that documented Plaintiff's treatment for her physical conditions. (*Id.* at PageID 55-57.) The ALJ cited to lumbar spine imaging which showed disc space narrowing, advanced degenerative disc disease, and extensive vacuum phenomenon at L5-S1. (*Id.* at PageID 55-56.) She also acknowledged a December 2015 examination which showed acute lumbar spine muscle spasms and complaints of radiating pain down the right leg. (*Id.* at PageID 56.) She compared these findings to thoracic spine imaging, which showed only mild spondylosis, as well as to other examinations which showed normal ambulation and no other significant abnormalities. (*Id.* at PageID 56.) The ALJ also cited to records that documented Plaintiff's "consistent reports of significantly decreased pain and symptoms with medications," and she explained that Plaintiff did not complain to her medical providers of any significant medication side effects. (*Id.*)

As for IBS, the ALJ summarized Plaintiff's intermittent treatment for her gastrointestinal complaints. (Doc. 8-2, PageID 56-57.) She acknowledged July 2014 abdominal imaging and testing which showed gastritis, a sigmoid colon polyp—which was ablated at that time—and internal hemorrhoids. (*Id.* at PageID 56.) The ALJ explained that Plaintiff's bowel functioning returned to normal just two weeks after the ablation procedure. (*Id.*) The ALJ also addressed an October 2017 flareup, when Plaintiff complained of diarrhea occurring several times per day over the past four weeks, as well as a fifteen-pound weight loss. (*Id.*) She explained that a workup, which included an EGD, colonoscopy, and biopsies, was unremarkable, and that physical examinations continued to show no significant abnormalities. (*Id.* at PageID 56-57.) The ALJ also

pointed out that Plaintiff had gained five pounds after just one month. (*Id.* at PageID 57.)
The ALJ acknowledged that Plaintiff continued to treat with a gastroenterologist for
complaints of diarrhea, constipation, and cramping, but she compared this to
unremarkable examinations and imaging reports during that time. (*Id.*) The ALJ
additionally cited records from emergency room visits in August 2019 and October 2019,
when Plaintiff complained of abdominal pain but denied diarrhea. (*Id.*)

The ALJ concluded that the balance of the objective evidence did not support
Plaintiff's allegations of symptom severity. (Doc. 8-2, PageID 58.) She specifically
explained that Plaintiff's IBS-related complaints were "not corroborate[d]" and were "not
supported by the longitudinal evidence of record." (*Id.* at PageID 54.) The ALJ accounted
for this evidence by limiting Plaintiff to the reduced range of light work in the RFC. (*Id.*
at PageID 53.) These conclusions are supported by substantial evidence.

The ALJ's conclusions about Plaintiff's mental impairments are also supported by
substantial evidence. The ALJ acknowledged many of Plaintiff's subjective mental health
complaints and testimony, including Plaintiff's complaints about difficulty with daily
activities, social interactions, reading, handling change, managing her mood, and
maintaining a regular work schedule. (Doc. 8-2, PageID 52-53.) She also recognized
Plaintiff's subjective complaints to medical providers, which included anxiety, a racing
heart, racing thoughts, problems focusing, and difficulty sleeping. (*Id.* at PageID 57-58.)
The ALJ explained that although Plaintiff reported panic attacks during the February
2018 consultative psychological examination, these complaints were "not reported to
other physicians." (*Id.* at PageID 58.) She also compared these complaints to Plaintiff's

9

statements about her capabilities. (*Id.* at PageID 52-54, 57.) The ALJ summarized the mental health treatment and evaluation records. (*Id.* at PageID 52-52, 57-58.) The ALJ discussed Plaintiff's outpatient treatment in late 2014 through early 2015. The ALJ acknowledged Plaintiff's subjective complaints to her therapist, but also noted that the provider documented only mild depression with anxiety. (*Id.* at PageID 57.)

The ALJ also discussed the February 2018 consultative psychological evaluation. (Doc. 8-2, PageID 58.)  The ALJ acknowledged that the examiner documented some tearfulness, preoccupation with her health, and difficulty with recall. (*Id.*) She explained that the examiner reported that Plaintiff was able to perform serial 7 testing slowly, but "with only one error," and that she could recall six digits forward and four digits backward. (*Id.*) The ALJ compared these findings to 2017 records, in which Plaintiff "continued to deny depression, anxiety, or difficulty sleeping . . . ." (*Id.*) Additionally, the ALJ cited to several normal mental status examinations throughout the treatment notes, as well as records that showed improvement in Plaintiff's alleged symptoms with Wellbutrin. (*Id.*) The ALJ further acknowledged that Plaintiff only initially complained of insomnia with Wellbutrin, and that this complaint "subsided in time." (*Id.*)

The ALJ concluded that the balance of the objective evidence relating to Plaintiff's mental condition did not support Plaintiff's allegations of symptom severity. (Doc. 8-2, PageID 58.) Further, the ALJ accounted for this evidence by limiting Plaintiff to the range of simple, routine tasks as identified in the RFC. (*Id.* at PageID 53.) These findings are supported by substantial evidence.

Finally, the ALJ did not err in her analysis of the medical opinion evidence. Because Plaintiff's claims were filed after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Because the first two factors–supportability and consistency–are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).[3] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

---

[3] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

Plaintiff challenges the ALJ's analysis of Dr. Gilberto Munoz's opinion. (Doc. 9, PageID 949-50) But the ALJ complied with the applicable regulations when concluding that Dr. Munoz's opinion was "very persuasive." (Doc. 8-2, PageID 61.) The ALJ found that Dr. Munoz's opinion was supported by his testimony, when he explained his review of the longitudinal record and cited to specific evidence to support his conclusions. (*Id.*) The ALJ also concluded that Dr. Munoz's opinion was consistent with the medical evidence he cited. (*Id.*) Significantly, Dr. Munoz explained that Plaintiff's IBS symptoms were intermittent, and that he did not see reports in the record of "increased frequency of bowel movements, reports of her soiling herself, or reports that she was using a diaper" to substantiate Plaintiff's testimony that she experienced IBS symptoms for three weeks each month. (*Id.*) Dr. Munoz also testified that the records regarding Plaintiff's lumbar spine condition generally showed "significant pain relief with medications," and the ALJ found this testimony to be consistent with the evidence. (*Id.*)

The ALJ further explained that Dr. Munoz testified "from a completely neutral and independent position" and that his opinion was "well within his medical expertise." (*Id.*) A medical expert's opinion may constitute substantial evidence "when it is supported by the other medical evidence of record." *Redding v. Shalala*, 1995 U.S. App. LEXIS 11683, *9 (6th Cir. 1995). Here, the ALJ accurately explained that Dr. Munoz's opinion was supported by other medical evidence of record. (Doc. 8-2, PageID 61.) And so the ALJ appropriately relied on Dr. Munoz's opinion when he adopted Dr. Munoz's suggested limitations and limited Plaintiff to the reduced range of light work described in the RFC. (*Id.* at PageID 53.)

Accordingly, substantial evidence supports the ALJ's RFC, and the ALJ did not err by failing to include additional limitations for off-task behavior and absenteeism.

**B.    VE Testimony**

The vocational expert (VE) initially testified that a hypothetical individual of Plaintiff's age, education, and work experience—and with the ALJ's RFC for a reduced range of light work—would be able to perform Plaintiff's past relevant work as a cashier and could also perform other jobs in the national economy. (Doc. 8-2, PageID 111-13.). In response to additional hypothetical questions, the VE testified that if an individual would be off-task more than fifteen percent of the workday or would miss two or more days of work per month, there would be no "competitive work." (*Id.* at PageID 113.)

Plaintiff argues that the ALJ erred by finding that Plaintiff does not require either of the work-preclusive limitations the ALJ included in the additional VE hypotheticals. (Doc. 9, PageID 946-47, 952.) Plaintiff contends that the ALJ "failed to fully consider essential vocational expert testimony that accurately portrayed [Plaintiff's] physical and mental impairments." (Doc. 9, PageID 947.) Plaintiff's assertion is not well-taken.

Plaintiff correctly summarized the VE's testimony that the limitations for off-task behavior and absenteeism would be work-preclusive. However, the fact that the ALJ asked the VE about a hypothetical person with particular limitations does not mean the VE's answer is binding on the ALJ. Simply posing a hypothetical question to the VE does not result in a finding about a claimant's RFC or bind the ALJ where the medical record does not support the inclusion of such limitations. *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531,

536 (6th Cir. 2019)). "An administrative law judge is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Plaintiff's argument, then, presumes that the additional hypotheticals posed to the VE accurately represent Plaintiff's RFC. Yet as discussed above, no medical source opined that Plaintiff would be off task for more than fifteen percent of the workday or require two or more absences per month. And the ALJ's RFC—which did not include any such restrictions—was supported by substantial evidence. Accordingly, this portion of the VE's testimony was not relevant to the ALJ's decision.

A disability claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512. The burden is on a claimant to furnish medical and other evidence about her impairments and the effects of her impairments on the ability to work. *Id.* Here, Plaintiff has not shown that the ALJ erred by failing to include additional restrictions in the RFC for being off task or absent from work. As discussed above, the ALJ thoroughly evaluated the medical evidence related to Plaintiff's impairments and explained her reasons for including the related functional restrictions in the RFC. (Doc. 8-2, PageID 52-61). Plaintiff has not shown that the evidence before the ALJ required the inclusion of greater limitations than those found by the ALJ. Nor has Plaintiff shown that the ALJ erred when she failed to rely on VE testimony that did not accurately reflect Plaintiff's functional limitations. Plaintiff has not

met her burden of proving that the ALJ's decision is unsupported by substantial evidence, and so it cannot be overturned by this Court.

## VI.    CONCLUSION

In sum, substantial evidence supports the ALJ's factual findings. Plaintiff's assertions to the contrary are without merit and are overruled.

**IT IS THEREFORE ORDERED THAT**:

1.    Plaintiff's Statement of Errors (Doc. 9) is OVERRULED;

2.    The Court AFFIRMS the Commissioner's non-disability determination; and

3.    The case is terminated on the Court's docket.

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge